IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

_____

**IN RE PIMA COUNTY MENTAL HEALTH NO. 20200860221**

_____

No. CV-22-0057-PR
Filed August 16, 2023

_____

Appeal from the Superior Court in Pima County
The Honorable Alyce L. Pennington, Judge Pro Tem
No. MH20200860221
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
252 Ariz. 442 (App. 2022)
**VACATED**

_____

COUNSEL:

Laura Conover, Pima County Attorney, Tiffany Tom (argued), Deputy
County Attorney, Tucson, Attorneys for Pima County

Molly Pettry (argued), Pima County Mental Health Defender, Attorney for
Appellant

Rachel H. Mitchell, Maricopa County Attorney, Joseph J. Branco, Deputy
County Attorney, Attorneys for Amicus Curiae Dr. Carol Olson

_____

CHIEF JUSTICE BRUTINEL authored the Opinion of the Court, in which
VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, LOPEZ, BEENE,
MONTGOMERY, and BERCH (RETIRED)* joined.

_____

* Justice Kathryn Hackett King is recused from this case. Pursuant to
article 6, section 3 of the Arizona Constitution, Justice Rebecca White
Berch (Ret.), was designated to sit in this matter.

CHIEF JUSTICE BRUTINEL, Opinion of the Court:

¶1        A petition for court-ordered treatment must be accompanied by the affidavits of two evaluating physicians; A.R.S. § 36-533(B) prescribes the information that must be included in those affidavits. We hold that the petitioning party must include in the affidavits all the information that § 36-533(B) requires. However, the required information may be contained in attachments to the affidavits if they specifically incorporate such attachments by reference.

## I. BACKGROUND

¶2        In February 2021, G.B. sought treatment at St. Mary's Hospital for gastrointestinal complaints. At that time, G.B. was seventy years old and weighed approximately eighty-three pounds; she was diagnosed with a delusional disorder, malnutrition, and cachexia.[1] According to a social worker at St. Mary's, G.B. believed the doctors were "trying to harm her." G.B. insisted on being discharged, but her medical team felt she had not made any progress and that her weight was "in a dangerous area." Because of those concerns, on March 3, 2021, the social worker filed an application for an involuntary evaluation of G.B., alleging she was persistently or acutely disabled ("PAD"). On March 4, 2021, a Title 36 (involuntary commitment) coordinator for a local screening agency evaluated G.B., prepared a pre-petition screening report, and concluded that "the PAD standards [were] met and that the involuntary evaluation process should proceed."

¶3        A petition for court-ordered evaluation of G.B. was filed on March 5, 2021, and the superior court signed an order for evaluation the same day. Pursuant to that order, G.B. was transferred to an inpatient psychiatric unit at Banner – University Medical Center South ("Banner"), where psychiatrists Dr. Madan and Dr. Colon evaluated her on March 10, 2021. Banner then filed a petition for court-ordered treatment, alleging that G.B. was PAD and requesting both inpatient and outpatient treatment. Banner attached to the petition two sets of three, stapled-together documents as the statutorily required affidavits of Drs. Colon and Madan. Each set related to a specific doctor and contained: (1) a signed and sworn

---

[1] Cachexia is "[a] general weight loss and wasting occurring in the course of a chronic disease or emotional disturbance." *Cachexia*, Stedman's Medical Dictionary (28th ed. 2005).

"Physician's Affidavit," consisting of a two-page, fill-in-the-blank form with boilerplate language that named G.B. as the patient but neither discussed any specific examinations or evaluations conducted by the physician nor referred to any attached addenda, reports, or evaluations; (2) an "Addendum No. 1—Persistently or Acutely Disabled" ("Addendum"), a two-page, generic, fill-in-the-blank form referencing G.B. but devoid of reference to any affidavits, reports, or evaluations; and (3) a "Final Report," presenting the physician's notes and findings based on each physician's March 10, 2021 evaluation. Banner contends that these documents together fulfill § 36-533(B)'s affidavit requirements.

¶4 At the hearing on the petition, G.B.'s counsel stipulated to the admission of Dr. Colon's Physician's Affidavit, Addendum, and Final Report in lieu of Dr. Colon's testimony. G.B's counsel did not object to the admission of Dr. Madan's Physician's Affidavit, Addendum, and Final Report, or to the application for involuntary evaluation prepared by the St. Mary's social worker. Dr. Madan testified that G.B. was suffering from "unspecified psychosis and likely delusional disorder, somatic type." Following the hearing, the trial court found that G.B. was PAD and ordered treatment for "one year with the ability to be re-hospitalized, should the need arise, in an inpatient psychiatric facility for a time period not to exceed 180 days." *In re Pima Cnty. Mental Health No. 20200860221*, 252 Ariz. 442, 444 ¶ 5 (App. 2022). G.B. appealed.

¶5 In a split decision, the court of appeals vacated the trial court's order. *Id.* at 447 ¶ 16. The majority found that involuntary-treatment proceedings require strict statutory compliance and determined that the affidavits of Drs. Colon and Madan failed to comply with § 36-533(B). *Id.* at 445–46 ¶¶ 9–12. The court took issue with the conclusory language of each Physician's Affidavit, stating that "boilerplate language cannot satisfy the requirements of § 36-533(B) insofar as it lacks any personalized discussion of G.B. and details relevant to the physicians' conclusions that she is PAD as a result of a mental disorder." *Id.* at 446 ¶ 12. The court assumed, but did not decide, that the Addenda stapled to the Physicians' Affidavits were part of the § 36-533 affidavits. *Id.* In contrast, the court did not consider the physicians' Final Reports part of the affidavits because it found that the Final Reports "accompanied" but were not "included" in the affidavits under the plain language of § 36-533(B). *Id.* ¶¶ 12–13. The court also found it significant that "the [Final R]eports, although signed, [were] not notarized or otherwise signed under penalty of

perjury, and are therefore not the equivalent of the affidavits required under the statute." *Id.* ¶ 13 (citing Ariz. R. Civ. P. 80 (permitting written declaration made under penalty of perjury as sufficient under any civil rule requiring an affidavit)).

¶6 The dissent would have affirmed the trial court's order, arguing that the evidence "complies with the purpose, intent, and requirements of § 36-533(B), and supports the trial court's finding that, as a result of a mental disorder, G.B. is [PAD]." *Id.* at 450 ¶ 27 (Espinosa, J., dissenting). The dissent articulated three main reasons to affirm the trial court's ruling: (1) G.B. waived her argument about insufficiency of the affidavits by not raising the issue in the trial court, *id.* at 448 ¶ 19; (2) G.B. invited error regarding the affidavit's deficiencies "to the extent she stipulated to the admission of Dr. Colon's affidavit, with the attached PAD addendum and written report, into evidence," *id.* ¶ 20; and (3) the court "need not focus on the affidavits in a vacuum because it is well-established that 'supplementation may cure a defective affidavit,'" *Id.* ¶ 21 (citing *Maricopa Cnty. No. MH 2007-001236*, 220 Ariz. 160, 167 ¶ 20 (App. 2008)). This petition for review followed.

¶7 We granted review to provide guidance on the requirements imposed by § 36-533(B), an issue of statewide importance likely to recur. This Court has jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## II. DISCUSSION

¶8 We are asked to decide whether a physician's affidavit complies with § 36-533(B) when the statutorily required information is not contained in the body of the affidavit but rather in an attached report or addendum and is not expressly referenced in the affidavit. Because G.B. is no longer subject to the court's order, rendering the case moot, we first consider whether this question is subject to repetition and likely to evade review such that we should nonetheless decide this case. *See Fraternal Ord. of Police Lodge 2 v. Phx. Emp. Rels. Bd.*, 133 Ariz. 126, 127 (1982).

### A. Mootness

¶9 "The Arizona Constitution omits a 'case or controversy' requirement akin to the one contained in its federal counterpart." *Welch v. Cochise Cnty. Bd. of Supervisors*, 251 Ariz. 519, 523 ¶ 12 (2021). Therefore,

this Court is not prohibited from considering moot issues. *Id.* This Court has, however, "consistently held that it will refrain from considering moot or abstract questions. We make an exception, however, to consider a question of great public importance or one [that] is likely to recur even though the question is presented in a moot case." *Fraternal Ord. of Police Lodge 2*, 133 Ariz. at 127 (internal citations omitted). While G.B.'s claim is moot, Pima County and other entities across the state regularly file petitions for court-ordered treatment, making compliance with § 36-533(B) a recurring issue. The issue is also one of statewide importance given the liberty interests inherent in court-ordered involuntary treatment. Thus, this Court will address the substance of this petition for review. We review this question of statutory interpretation de novo. *Welch*, 251 Ariz. at 523 ¶ 11.

## B. Guidance For § 36-533(B) Compliance

**¶10**        To subject a person to involuntary commitment, the petitioner must adhere to the statutory requirements, which detail what the petition must allege and the supporting documentation required. *See generally* A.R.S. §§ 36-501 to -550.09 (Title 36, Chapter 5). Sections 36-533(B) and 36-335(B) both make compliance mandatory by using the word "shall." *See Ins. Co. of N. Am. v. Superior Court*, 166 Ariz. 82, 85 (1990) ("The use of the word 'shall' indicates a mandatory intent by the legislature."). Similarly, our caselaw requires adherence to statutory requirements. *See In re Commitment of Alleged Mentally Disordered Pers.*, 181 Ariz. 290, 293 (1995) ("Because such proceedings may result in a serious deprivation of liberty, however, the statutory requirements must be strictly adhered to."); *In re Maricopa Cnty. Superior Ct. No. MH 2001-001139*, 203 Ariz. 351, 353 ¶ 8 (App. 2002) ("Because involuntary treatment proceedings may result in a serious deprivation of appellant's liberty interests, statutory requirements must be strictly met.").

**¶11**        Although the court of appeals held that § 36-533(B) "compel[s] strict statutory compliance," 252 Ariz. at 445 ¶ 9, "strict compliance" is a term of art used in election law cases. In that context it connotes an intolerance for technical errors, *see W. Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 429 (1991), and contrasts with "substantial compliance"—a standard that instead tolerates errors if the purpose of the relevant statutory requirements was nevertheless fulfilled, *see Wilhelm v. Brewer*, 219 Ariz. 45, 46 ¶ 2 (2008). We decline to import a "strict compliance" requirement in the mental health context. To the extent our prior caselaw asserting that "statutory requirements must be *strictly adhered*

*to*" suggested adoption of a "strict compliance" standard, *In re Commitment of Alleged Mentally Disordered Pers.*, 181 Ariz. at 293 (emphasis added), we now clarify that the requirement is simply complete compliance with each statute's requirements, even when that compliance is technically different from what the statute requires.

¶12        Section 36-533 establishes the allegations that are required in a petition for court-ordered treatment. Subsection (B) outlines the requirements for physicians' affidavits:

> The petition shall be *accompanied* by the affidavits of the two physicians who participated in the evaluation . . . . The affidavits of the physicians shall describe in detail the behavior that indicates that the person, as a result of mental disorder, is a danger to self or to others or has a persistent or acute disability or a grave disability and shall be based on the physician's observations of the patient and the physician's study of information about the patient. A summary of the facts that support the allegations of the petition shall be *included*. The affidavit shall also *include* any of the results of the physical examination of the patient if relevant to the patient's psychiatric condition.

§ 36-533(B) (emphasis added). In sum, compliance with subsection (B) requires that two physician's affidavits must accompany the petition and each affidavit must include: (1) details supporting each physician's conclusions, based on the physician's observations of or study of information about the patient; (2) a summary of facts supporting each physician's allegations; and (3) results of the patient's physical exam relevant to the patient's psychiatric condition. *Id.*

¶13        Here, the Physicians' Affidavits that accompanied the petition did not comply with § 36-533(B)—they are boilerplate and nearly identical, personalized only to the extent they included G.B.'s name and a few words explaining her probable diagnosis. They are conclusory and do not, on their own, satisfy the requirement that the "physicians shall describe in detail" their findings "based on the physician's observations of the patient and the physician's study of information about the patient." § 36-533(B); *see In re MH2011-000914*, 229 Ariz. 312, 315 ¶ 9 (App. 2012) (stating physicians must detail their observations to satisfy the clear and convincing evidentiary standard).

¶14        The attached Addenda and Final Reports ("Attachments") are also insufficient under § 36-533(B).  Arguably, the level of detail in the Attachments would satisfy the statute, except they are unsworn and not incorporated in the Physicians' Affidavits by reference.  The plain language of § 36-533(B) requires two physician's "affidavits."  An affidavit is a sworn factual declaration.  *See Affidavit*, Black's Law Dictionary (11th ed. 2019) ("A voluntary declaration of facts written down and sworn to by a declarant, [usually] before an officer authorized to administer oaths.").  Because the truth of the information contained in the Attachments was not sworn to under oath, the Attachments are not "affidavits" that "accompan[y]" the petition.  *See* § 36-533(B).  Likewise, the detail provided in the Attachments cannot satisfy § 36-533(B) because they are attached to but not "included" in the Affidavits.

¶15        No Arizona case has decided whether courts may consider contents of an attachment to an affidavit if the affidavit specifically incorporates the report by reference.  However, other states recognize incorporation by reference to supplement a petition for involuntary treatment.  The Montana Supreme Court,[2] California Supreme Court, and Wisconsin Court of Appeals have each recognized incorporation by reference in the involuntary treatment context.  *See In re S.D.*, 422 P.3d 122, 123 ¶¶ 2–3 (Mont. 2018) (determining the sufficiency of a petition for commitment and considering the contents of a physician's report that were expressly incorporated in the petition); *People v. Barrett*, 281 P.3d 753, 766 (Cal. 2012) (allowing medical center records to be incorporated by reference into the petition for involuntary commitment); *In re Mental Commitment of D.D.A.*, 954 N.W.2d 755, 758 ¶ 9 n.6 (Wis. Ct. App. 2020) (determining whether statutory requirements for recommitment were satisfied and considering the contents of a physician's letter that were expressly incorporated in the petition).[3]

---

[2] Like Arizona's § 36-533(B) requirement that a petition for court-ordered treatment must *include* certain elements, Part II ¶ 11, in Montana a petition for commitment "must *contain* . . . facts supporting the allegation of mental disorder, including a report by a mental health professional if any."  Mont. Code Ann. § 53-21-121(2) (emphasis added).

[3] This case is unpublished and therefore may only be cited for persuasive value in Wisconsin.  Wis. Stat. § 809.23.  The Wisconsin Supreme Court

**¶16**        Similarly, Arizona courts, statutes, and our Rules of Civil Procedure recognize incorporation by reference in other contexts. Arizona caselaw recognizes incorporation by reference in contracts and warrants. *See, e.g.*, *Indus. Comm'n v. Ariz. Power Co.*, 37 Ariz. 425, 431 (1931) ("It has long been settled, without a dissenting voice, that parties may incorporate into agreements by mere reference other writings or agreements or records and thereby make the latter an essential part of their contract."); *State v. Terrell*, 156 Ariz. 499, 502 (App. 1988) (finding the statement that items "more fully described in the affidavit" had "clearly incorporate[d] the affidavit descriptions into [a] search warrant"). The Arizona Revised Statutes permit incorporation of extrinsic documents in wills, A.R.S. § 14-2510 ("A testator may incorporate a written document into the testator's will by reference . . . ."), and marriage dissolution, A.R.S. § 25-317(D)–(G) (permitting incorporation by reference of a fair and reasonable separation agreement into a decree of dissolution, annulment, or legal separation). Per Arizona Rule of Civil Procedure 10(c), exhibits to a pleading—documents (1) referenced in and (2) attached to the pleading— are "part of the pleading for all purposes." We conclude that when an affidavit incorporates a report by reference, the incorporated material is "included" in the referencing affidavit. Thus, a party can completely comply with § 36-533(B) by incorporating material containing the statutorily required information in its affidavits.

**¶17**        Accordingly, we hold that in determining whether a petition for court-ordered treatment complies with statutory requirements, courts may consider contents of an extrinsic document attached to an affidavit if the affidavit specifically incorporates the attachment by reference. To incorporate an extrinsic document into a § 36-533(B) affidavit, the document must be (1) expressly referenced and (2) attached to the referencing affidavit. These two requirements are consistent with Rule 10(c)'s requirements for incorporating exhibits into pleadings. Attaching the documents to the referencing affidavit ensures that the documents are included in the petition for court-ordered treatment that is filed with the court and guarantees that the court and the opposing party

---

denied review of the case. *Winnebago County v. D.D.A.*, 988 N.W.2d 287, 287 (Wis. 2021). We cite the case for persuasive value pursuant to the Rules of the Supreme Court of Arizona. Ariz. R. Sup. Ct. 111(d) (permitting citation to "a decision of a tribunal in another jurisdiction, as permitted in that jurisdiction").

have access to the referenced facts and allegations contained therein. *See* § 36-533(E)–(F) (requiring copies of the petition to be sent to third parties in some situations).

**¶18** Again, although an affidavit may expressly incorporate an attached report by reference such that the attachment's contents are included in the referencing affidavit, it remains best practice to provide all the statutorily required information in the affidavit itself. Providing all the information required by § 36-533(B) in the body of the affidavit aids busy trial courts by allowing them to quickly determine whether the statutory requirements were satisfied. An attached report that is not incorporated into an affidavit cannot independently satisfy § 36-533. *Cf. Beltran v. Roll*, 39 Ariz. 417, 424–25 (1932) (explaining that although an exhibit to a pleading becomes part of the pleading itself, it "cannot be considered in determining the sufficiency of the pleading" and "is only available for the purpose of enlarging and making more complete allegations which are legally sufficient in themselves, and which appear in the body of the pleading").

## C. Waiver And Fundamental Error

**¶19** Because the Physicians' Affidavits and Attachments Banner submitted with its petition for court ordered treatment did not comply with the § 36-533(B)'s affidavit requirement, we turn to the question of whether G.B. waived that issue. We find that she did. G.B.'s attorney did not object to any statutory deficiency either through a pretrial motion to dismiss or by objecting to or arguing during the hearing that the Physicians' Affidavits were defective. In fact, G.B.'s attorney stipulated to the admission of the Physicians' Affidavits and Attachments, reserving only hearsay objections.[4]

---

[4] Arguably, stipulating to admission of affidavits without objection invited error. *See In re Larry B.*, No. 1 CA-MH 13-0089, 2014 WL 2462813, at *2 ¶ 10 (Ariz. App. May 29, 2014) (mem. decision) (reasoning that when a party stipulates to entry of a document into evidence and that document has attachments, the court may also consider those attachments pursuant to the stipulation); *In re Gary P.*, No. 1 CA-MH 13-0088, 2014 WL 2156627, at *4 ¶ 16 (Ariz. App. May 20, 2014) (mem. decision) ("When parties stipulate that the court may consider a document already included in the . . . record, it is incumbent on counsel to limit or qualify the stipulation if the entire document is not intended to be submitted for the court's consideration."). But we need not address that argument here.

At oral argument, G.B.'s attorney acknowledged that she failed to object to the sufficiency of the Physicians' Affidavits for strategic reasons—because she did not want to delay the commitment proceedings further and potentially prolong her client's inpatient treatment by drawing the error to the court's and opposing counsel's attention. Had she done so, the County likely could have cured the defects, thereby avoiding any error altogether. G.B. should not benefit from such conduct, and we disapprove of such gamesmanship.

**¶20** Because G.B. waived her objection to the sufficiency of the Physician's Affidavits, we review only for fundamental error. *See State v. Bolton*, 182 Ariz. 290, 297 (1995). Although we apply fundamental error review sparingly in civil cases, it is appropriate where the issue concerns a deprivation of a party's constitutional rights. *Bradshaw v. State Farm Mut. Auto. Ins.*, 157 Ariz. 411, 420 (1988). Fundamental error review is appropriate here because G.B.'s liberty was at stake and thus her right to due process of law is at issue. *See Addington v. Texas*, 441 U.S. 418, 425 (1979) ("[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.").

**¶21** In conducting fundamental error review, we identify (1) "whether trial error exists" and (2) "whether the error is fundamental" under "the totality of the circumstances." *State v. Escalante*, 245 Ariz. 135, 142 ¶ 21 (2018). For the reasons previously explained, the trial court erred in finding that the Physicians' Affidavits complied with § 36-533(B). To establish that the error was fundamental, G.B. must show one of the following: that the error (1) went to the foundation of the case and was prejudicial, (2) deprived her of a right essential to her defense and was prejudicial, or (3) precluded the possibility that she received a fair trial. *Id.* G.B. did not argue the existence of fundamental error or prejudice in her briefing. At oral argument in this Court, G.B.'s counsel described trial error, but did not convincingly point to any prejudice to G.B. or to the presentation of G.B.'s case. Indeed, G.B.'s counsel admitted she was able to cross-examine Dr. Madan and present her own experts and witnesses.

**¶22** We do not find fundamental, prejudicial error because the trial court's error did not deprive G.B. of a fair opportunity to oppose the petition for involuntary treatment or to otherwise receive a fair hearing. At the commitment hearing, Dr. Madan testified about his Physician's Affidavit and was cross-examined by G.B. about his opinions. Although Dr. Colon did not testify, his Physician's Affidavit and

Final Report were admitted in lieu of testimony, per the parties' stipulation. *See* A.R.S. § 36-539(B). Dr. Colon's report was nearly identical to Dr. Madan's, and G.B. does not argue there was any error in the substance of his report. Additionally, during the two-day hearing, multiple clinicians and G.B. testified regarding G.B.'s. condition. Notwithstanding the defective Physicians' Affidavits, the trial court had sufficient evidence upon which to base its ruling. The court did not commit fundamental error.

### III. CONCLUSION

**¶23**        We vacate the court of appeals' opinion and affirm the trial court's order.